*Margin:* NEW YORK, Dec. 1822. The People *vs.* A. M'Ardle.

---

## The People *vs.* Archibald M'Ardle. *Assault and Battery.*

ARCHIBALD M'ARDLE was charged with committing a violent assault and battery upon Peter Crawbeck, on the 5th of September, 1822.

The prosecutor testified that on the 5th of September, his attention was attracted to the circumstance of an ar-

*Margin:* If A arrests B on a charge of passing upon him a counterfeit note, and takes her into his house

NEW-YORK.
Dec. 1822.

The People
vs.
A. M'Ardle.

and detains her there for three quarters of an hour and offers to release her if she will pay him for the note, it is an assault and battery and false imprisonment. The duty of a citizen in such a case would be to take her immediately to the proper authority.

rest made by the defendant on Miss Jemima Johnson and her sister, Mrs. Clark, on a charge of passing upon the defendant a $5 counterfeit note. It appeared the defendant saw them pass his store in the Bowery, and followed, and seized, and compelled them to return to his house. They were very much frightened, and cried for help, and denied ever having passed any counterfeit money upon the defendant. They were, nevertheless, taken into the store of the defendant, where they remained about one hour.

The circumstance excited some attention in the neighborhood, and a considerable number of people were gathered before the door: among others was the prosecutor.— The defendant offered to let the ladies go if they would pay him for the $5 counterfeit note, which he alleged he had received from them, but told them if they did not he would send for an officer and take them to the police.

Mr. Crawbeck expostulated with him, on his treatment of the ladies: he went into the house where they were confined, and some words between himself and the defendant ensued, which resulted in the assault and battery complained of. The prosecutor testified thas the defendant seized him by the throat, and used him violently.

*Maxwell, District Attorney,* examined the prosecutor, and before he turned him over to the defendants for cross examination, Wilson asked him a question in explanation to what he had testified. He was stopped by the Court. They observed the question was irregular, and had often observed it before; but that counsel would break through those rules in regard to examining witnesses so often explained, and so necessary to be enforced.

*Sampson* and *D. Graham,,* for the defendant. They called witnesses to prove that Miss Johnson did pass the bill upon the defendant. For this purpose they called

Mr. Petrie, who testified that Miss Johnson came into his store in the Bowery, to purchase a ball of cotton, and offered him a $5 counterfeit note in payment; that she had on a straw bonnet and white spencer: he was certain he could not be mistaken. Miss Johnson was called to the witness's stand, that her countenance might be more distinctly seen. He presisted that she was the same woman : that he was certain, and could not be mistaken

*Mr. Miller* was also called. He testified that he was a store-keeper in the Bowery : that Miss Johnson came into his store and offered him the same note that was afterwards received by the defendant : that he was certain she was the same woman, and was certain it was the same note.

This evidence was introduced to show that the conduct of the defendant to the ladies, did not require the interposition of the prosecutor in their favor, and to show that the prosecutor was the aggressor in coming in the defendant's house, and interfering as he did.

It was proved by a number of respectable witnesses, that Miss Johnson was lately from Middletown, in the State of Connecticut, and was entirely unacquainted with the city : that she had no such dress as described by Petrie and Miller. It was also proved that she was a young woman of good character : and that the witnesses must have been mistaken in the identity of the person of Miss Johnson.

*By the Court..*—" Any person has a right to arrest a " felon, and bring them before the proper authority. It is, " indeed, the duty of the citizen to do so. But then this " power cannot be trifled with, as it appears to have been " in the present case. The defendant seized Miss Johnson " in company with her sister, Mrs. Clark, by the arm, in " the street, charging her with, a few days before, passing

NEW-YORK, Dec. 1822.

The People
*vs.*
A. M'Ardle.

NEW-YORK,   "a counterfeit bill upon him. He took them into his house,
Dec .1822.
          "and there confined them for the space of nearly an hour;
The People "telling Miss Johnson if she would pay him in good mon-
   vs.
A. M'Ardle. "ey, the amount he alleged he received from her, he
          "would let her go, if not, he would send for an officer, and
          "take her to the Police Office.   This mode of proceeding
          "was clearly irregular.   It was the duty of the defendant,
          "if he believed the woman guilty, to take her immediately
          "to the proper authority ;  or if that could not be done, to
          "secure her in his own house or some other place, until
          "he could send for an officer, or take her himself.   But
          "in this case it does not appear that public good was his
          "object, but on the contrary, private interest.   He offered
          "to let her go if she would pay him five dollars for the
          "bad bill.   Now, it is certain he had no right to force her
          "into his house and detain her there for the purpose of re-
          "ceiving five dollars for any consideration.

    The jury returned a verdict of guilty.

NOTE.—The importance of the above case to the public, would seem
    to warrant an  inquiry into the law relating to arrests on a crim-
    inal charge.    There is, perhaps, no title of criminal jurisprudence
    less known, and more important to be known, than that relating to
    arrests.   We will inquire,
              1st.  Who may be arrested.
              2d.  Who may arrest.
              3d.  When and where.
              4th.  The manner of the arrest.
        1.  Who may be arrested.
          It may be laid down as good law that all persons who are able
        to commit a crime, may be arrested for  capital crimes or vio-
        lent injuries and  misdemeanors.
              1st.  A person may be arrested on suspicion of treason, fel-
                  ony, or actual breach of the peace, without a warrant
                  by a justice of the peace;  by the sheriff;  by the cor-
                  oner; and by a constable ; 2 Hale, 72—108.  Hawk.
                  b. 2. c. 12.  4 Black. Com. 292.

2d. A person may be arrested by a private citizen, who is present when a felony or actual breach of the peace is committed. 2 Hawk. 74. Black. Com. 293.

.3d. In the syllabus of Wallace's Case, City Hall Rec. vol. 4. p. 111. it is said, it is not only the right, but the duty, of every citizen, without a warrant, to use all lawful means in arresting any one committing a breach of the peace.

4th. A married woman may be·arrested for any crime for which she can be punished. 2 Leach, 954—1102. 3 Burr 1681.

2. Who may arrest.

1st. Any private citizen may, indeed they are bound to arrest a person for treason, felony, or actual breach of the peace, without a warrant, if committed in their presence. 4 Black.Com. 292. 1 Hale, 587. 1 East., T. C. 298, City Hall Rec. vol. 4.111. But they cannot after the affray is over. 11 John Rep. 486.

2d. A private citizen is bound to assist to take a felon or suppress an affray, under the penalty of fine and imprisonment, ibid. Bac. abr. Tresp. D. 3.

3d. A private citizen may arrest on probable grounds of suspicion of treason, or felony without a warrant ; and if it turns out the party arrested was innocent, he will not be held liable. 4 Taun, 34. This principle seems to have been doubted. Vide. 11 John Rep. 486. 1 Binney, 316.

4th. A private citizen may break open doors in pursuit of a felon, without a warrant, if the felony was committed in his presence. 2 Hale, 77. But he cannot do it on suspicion. 2 Hale, 82. 1 East, 299—300.

5th. A private citizen may lay hold of a mad person to prevent the commission of a crime or injury either to the public or to an individual.

6th. Any person may seize another who is on the point of committing a felony or a breach of the peace,

NEW-YORK,
Dec. 1822.

The People,
vs.
A M'Ardle.

and hold to prevent a felony or actual breach of the peace.

7th. The county may arrest by hue and cry.

3. When and where.

 1st. A person may be arrested for treason, felony, or a breach of the peace, either at night or on a Sunday ; either with or without a warrant. 1 Term, Rep. 265. Willes, 459. Cald. 291—293.

 2d. A felon may be arrested in any place. There is no sanctuary, as formerly, to the criminal. A clergyman may be arrested while performing service in his church. Cro. I. 321. And if a person commits a felony in one county and escapes into another, he may be arrested and conveyed back to the place where the offence was committed. 4 Taun. 34.

4. The manner of the arrest.

 1st. Upon an arrest either with or without a warrant, the party should be immediately brought to the proper authority. 2 Hale, 219. Fortes. 143. And cannot be detained at the will of the party making the arrest, with the following exceptions :

He may be detained in the custody of the person making the arrest.

 1. If the arrest is made near, or at the evening, whereby he cannot take the party to the proper authority. 2 Hale, 119.

 2. If he has good reason to suppose a rescue will be attempted. 2 Hale, 120.

 3. If the party arrested is sick, and unable to travel. Ibid.

 4. If the arrest is made without *warrant*, and the charge is for a misdemeanor, the officer may let him go, taking his word for his appearance in a reasonable time, at the proper authority. 1 Esp. Rep. 295. 2 New. Rep. 211.